Holmes, Administratrix, Appellant, vs. Holmes and another, Respondents.

*November 13—December 11, 1923.*

*Corporations: Assignment of shares of stock: Form: Sufficiency: Delivery of certificate: Equity: Conveyance in fraud of creditors: Maxim as to coming into court with clean hands: Application as between defendants.*

1. In an action by an administratix to cancel her indorsement on stock certificates, the trial court found that the stock in the first instance had been conveyed by one of the defendants to the intestate for the sole purpose of defrauding defendant's creditors and that the plaintiff was not entitled to relief. The rule requiring him who seeks equity to come into court with clean hands did not preclude equitable relief for one of the defendants against a corporation which was a codefendant. p. 166.

2. Where one who, to defraud creditors of his father, had been holding stock certificates in his own name, returned them, together with a writing certifying that the described stock "goes to my parents, Mr. and Mrs. J. A. H.," it is *held* that,

although there was no sufficient indorsement to constitute a transfer under sub. (1), sec. 1751n—1, Stats. 1921 (the Uniform Stock Transfer Act), the writing constituted a sufficient assignment to constitute, together with actual delivery, a valid transfer under sub. (2) of the same section.    p. 168.

3. In construing an assignment of corporate stock the court should take into account all the surrounding facts and circumstances. p. 168.

4. An assignment of a chose in action, such as a stock certificate, need not be in any particular form, and is sufficient if it shows the intention of the owner to transfer it.    p. 168.

APPEAL from a judgment of the circuit court for Milwaukee county: BYRON B. PARK, Judge.    *Affirmed.*

This was an action to cancel the indorsement on certain certificates of stock in the *Ward Baking Company* and to have the title of said stock adjudged to be a part of the estate of F. D. D. Holmes, deceased, and compel the issuance of a new certificate in the name of the estate of F. D. D. Holmes, and for the delivery of the certificate when executed to the plaintiff as administratrix of the estate of the said F. D. D. Holmes.

The court found as follows:

(1) The death of F. D. D. Holmes and the appointment of plaintiff as administratrix of his estate on July 6, 1921.

(2) That for a number of years prior to February, 1921, the defendant *John A. Holmes* was the owner and in possession of fifty-three shares of the capital stock of the *Ward Baking Company*.

(3) That about the 17th day of February, 1921, the defendant *John A. Holmes* assigned said stock to F. D. D. Holmes and the same was thereafter transferred on the books of the *Ward Baking Company* to F. D. D. Holmes.

(4.) That said assignment and transfer was made by said defendant and accepted by F. D. D. Holmes for the sole purpose of defrauding certain of the defendant *John A. Holmes'* creditors.

(5) That on the 21st day of March, 1921, F. D. D. Holmes executed certain writings for the sole purpose of

protecting the defendant *John A. Holmes* in his ownership of said stock and also for the purpose of shielding the said *John A. Holmes* from his creditors.

(6) That about three weeks before the death of the said F. D. D. Holmes he delivered the fifty-three shares of capital stock back to the defendant *John A. Holmes.*

(7) That after the death of F. D. D. Holmes, his wife, *Laura Blanche Holmes,* indorsed the name of her husband on the stock certificates.

(8) That the defendant *John A. Holmes* is and ever since the purchase of said stock certificates by him has been the legal owner of said stock.

(9) That the said F. D. D. Holmes never at any time was the owner of the said fifty-three shares of the capital stock of the *Ward Baking Company,* except in a trust capacity.

As conclusions of law the court found:

(1) That the signature of F. D. D. Holmes made by his wife was void.

(2) That the defendant *John A. Holmes* was at all times and is now the lawful owner of the said fifty-three shares of the capital stock of the *Ward Baking Company,* together with accrued interest and stock dividends.

(3) That F. D. D. Holmes terminated his trust in reference to the fifty-three shares of the capital stock in the *Ward Baking Company* when he surrendered the stock certificate together with Exhibit 2 A.

(4) That plaintiff is not entitled to any relief in this action.

(5) That defendant *John A. Holmes* is entitled to have transferred to him the said fifty-three shares of stock, together with all cash and dividends that have accrued thereon; and

(6) That no costs shall be allowed to either party.

From the judgment entered accordingly the plaintiff appeals.

*Oliver L. O'Boyle* of Milwaukee, for the appellant.

For the respondents there was a brief by *Brennan &*

*Lucas,* attorneys, and *Timlin & Dean,* of counsel, all of Milwaukee, and oral argument by *Martin J. Brennan* and *Patrick W. Dean.*

ROSENBERRY, J.   It is the contention of the plaintiff in this case (1st) that the defendant *John A. Holmes* is not entitled to equitable relief because he does not come into court with clean hands; (2d) that there is no evidence to sustain the finding of the trial court of the delivery of the stock certificates and the termination of the trust prior to the death of F. D. D. Holmes; (3d) that if the evidence is sufficient to sustain the finding in respect to delivery it was not sufficient under sec. 1751*n*—1, Stats., being that section of the uniform act relating to transfer of stock.

With respect to the first assignment of error, the plaintiff misapprehends the application of the rule upon which she relies.   This action was begun not by the defendant *John A. Holmes,* but by the plaintiff seeking equitable relief in her own behalf as administratrix of the estate of her deceased husband.   The court found that the plaintiff was not entitled to relief.   Having assumed jurisdiction of the controversy, which was equitable in its nature, it proceeded to try and determine the entire controversy in order that complete relief might be afforded and a multiplicity of suits avoided.   The court having determined that the plaintiff had no title to or interest in the stock of the *Ward Baking Company,* the plaintiff is certainly in no position to question the disposition made by the court of the stock as between the defendant *John A. Holmes* and the defendant *Ward Baking Company.*   As against the plaintiff no equitable relief was granted.   While there appears to be no amendment to the pleadings asking affirmative relief on the part of the defendant *John A. Holmes,* no complaint was made in respect thereto by the interested parties, and under the statute the pleadings must be considered amended accordingly.

Second, we shall not set forth in detail the evidence relating to delivery. The finding is not against the clear weight of the evidence but is in accord with the great preponderance of the evidence as we view it.

Third, the facts as found by the trial court respecting the delivery and transfer of the certificate are as follows: that on the 21st day of March, 1921, F. D. D. Holmes executed writings Exhibits 2 and 2 A, which said writings were executed for the sole purpose of protecting the defendant *John A. Holmes* in his ownership of said stock and also for the purpose of shielding the said *John A. Holmes* from his creditors, and one of these writings (Exhibit 2 A) was held by the said F. D. D. Holmes and the other by the defendant *John A. Holmes;* that about three weeks before the death of the said F. D. D. Holmes (on or about April 16, 1921), he, the said F. D. D. Holmes, delivered the fifty-three shares of the capital stock of the Ward Baking Company back to the defendant *John A. Holmes,* together with the writing marked Exhibit 2 A. It appears that the certificates were kept in a safety-deposit box, the decedent retaining one key and the defendant *John A. Holmes* the other. Exhibit 2 is as follows:

"Milwaukee, Wis., March 21, 1921.

"This is to certify that all savings acct. in the First Natl. Bank of Wauwatosa goes to my Parents, Mr. and Mrs. J. A. Holmes. This is also to certify that the Ward Baking stock in Box 137—in Safety Deposit vault First Natl. Bank of Wauwatosa goes to my Parents, Mr. and Mrs. J. A. Holmes.                    F. D. D. HOLMES."

Following the delivery of this so-called certificate, the defendant *John A. Holmes* removed the certificates from the safety-deposit box and thereafter retained them in his possession, and within a few days after the death of F. D. D. Holmes procured the indorsement of the certificate by the plaintiff. The question is whether or not these transactions are sufficient to sustain the trial court's conclusion that F. D. D. Holmes terminated his ownership in the cer-

tificate and that *John A. Holmes* (Mrs. John A. Holmes, the mother of F. D. D. Holmes and wife of the defendant *John A. Holmes,* died previous to the commencement of this action) became entitled to have the certificate re-issued to him by the *Ward Baking Company.* The *Ward Baking Company* is a New York corporation, but the laws of New York and Wisconsin as to stock transfer are identical, both states having adopted the Uniform Stock Transfer Act. The transaction does not amount to a transfer under sub. (1), sec. 1751*n*—1, Stats., because the certificate was not indorsed either in blank or to a specified person by the person appearing to be the owner thereof. By sub. (2) of sec. 1751*n*—1 it is provided:

"Title to a certificate and to the shares represented thereby can be transferred only: . . .

"(2) By delivery of the certificate and a separate document containing a written assignment of the certificate . . . signed by the person appearing by the certificate to be the owner of the shares represented thereby."

It is contended by the plaintiff that this instrument is not an assignment but is an attempt to control the future disposition of his property and therefore invalid as not being executed in accordance with the statute. If only the language of the instrument were to be considered apart from the surrounding facts and circumstances this argument would be entitled to considerable weight. It is our duty to take into account the surrounding facts and circumstances. An assignment need not be in any particular form and is sufficient if it shows the intention of the owner of a chose in action to transfer it. The execution and delivery of this instrument, followed as it was by the manual delivery of the certificate representing the shares, is, we think, a sufficient compliance with the terms of sub. (2) of sec. 1751*n*—1, Stats. It is clear from the language of the whole transaction that a transfer was intended. The only question left open for consideration was whether or not it was

a present or future transfer.   In this respect the language is ambiguous, but when the fact is established that the execution of the writing was accompanied by a transfer of the stock, we think the conclusion of the trial court is correct. The word "goes" is not an appropriate term to express the intent of the parties.   It is, however, often used with that meaning by persons unskilled in the use of legal terms.

*By the Court.*—Judgment affirmed.