WILLIAM E. STEINBACK, PETITIONER, *v.* COMMISSIONER OF INTERNAL REVENUE, RESPONDENT.

Docket No. 61944. Promulgated July 20, 1934.

*Sidney I. Prager, Esq.*, for the petitioner.
*R. W. Wilson, Esq.*, for the respondent.

OPINION.

LEECH: Petitioner seeks redetermination of an income tax deficiency in the amount of $8,618.67 for the calendar year 1929, asserted by respondent due to his disallowance of a claimed loss deduction amounting to $60,024.27.

Respondent, by his answer, affirmatively avers that one item of income reported in the return in the amount of $71,524.90 as gain from the sale of real estate in 1929, should be increased to $94,024.96 and asserts claim for an increase in the above mentioned deficiency. Petitioner's reply to the answer denies such averment. At the hearing respondent conceded the correctness of petitioner's return as to this item of income and no evidence has been submitted thereon.

Petitioner is an individual residing at Brooklyn, New York.

During 1924 or 1925 petitioner purchased 51 percent of the outstanding stock of the Algonquin Electric Co. of New York at a cost of $60,024.27 and became president and general manager of that

corporation, hereinafter referred to as the New York corporation. That corporation encountered financial difficulties and in 1926 an equity receiver was appointed. The petitioner secured a composition agreement with the corporation's creditors for the purpose of effecting a reorganization. Under such agreement the corporation executed notes in an amount equal to about 60 percent of the creditors' claims. In 1926, the reorganization was effected through the incorporation of the Algonquin Electric Co. of Delaware, hereinafter referred to as the Delaware corporation.

Due to such reorganization, the petitioner, in 1926, received 10,000 shares of stock of the Delaware corporation in exchange for his shares of stock of the New York corporation. He was not in control of the Delaware corporation and he did not become an officer thereof. Emil Potter became president of the Delaware corporation and his wife owned the controlling stock interest.

On January 23, 1928, Emil Potter as complainant filed in the U.S. District Court, Southern District of New York, an application for an equity receivership for the Delaware corporation. Thereafter, in the same month, certain creditors of the Delaware corporation filed a petition in bankruptcy, but such petition was denied and the equity receiver remained in possession of the corporation's assets. A creditors' committee was then granted permission to intervene in the equity receivership proceedings and after a trial of the issues involved, including that of insolvency, the court, in March 1928, rendered judgment that the Delaware corporation was insolvent. Subsequently, during 1928, the Poughkeepsie Trust Co. obtained leave, in the equity receivership proceeding, to commence foreclosure proceedings on the mortgages, which it owned, on the Delaware corporation's plant located at Poughkeepsie, New York. The foreclosure suit was not terminated until January or February 1929, and the property was sold in that year. The receivership proceedings were not finally terminated until 1933.

At the time the equity receivership proceedings were commenced in January 1928, the Delaware corporation owed the members of the creditors' committee approximately $120,000, including the total amount due under the previous creditors' composition of 1926. The record does not disclose whether such amount was the corporation's total indebtedness in January 1928. There is no proof of the Delaware corporation's assets.

The petitioner believed that his stockholdings had a prospective value if a reorganization could be effected and during 1928 and up to the time of the sale, under foreclosure, of the plant in 1929, he endeavored to engineer a reorganization. He interviewed the creditors and the attorney for the Poughkeepsie Trust Co. and had a

reasonable hope of their aid providing he could work out a satisfactory plan. Petitioner's plan was to raise about $250,000 new capital and secure a contract with the Sachs Bearing Co. of Germany to manufacture ball bearings at the Poughkeepsie plant. However, he made no progress in his plans during 1928, for he could not raise additional cash capital until he consummated some definite program for the manufacture of ball bearings and, on the other hand, the Sachs Bearing Co. would make no definite agreement unless petitioner secured the additional capital. Other contemplated plans failed to materialize.

Petitioner was one of about fifteen stockholders of the Delaware corporation and he did not secure the cooperation of any of the others in his plans for a reorganization. He was not on good terms with Emil Potter and his wife, who owned the controlling stock interest. In fact, Potter and his wife had organized another corporation. Petitioner endeavored to have the equity receivers bring suit against the Potters for the recovery of the value of certain property alleged to have been taken from the Delaware corporation. Petitioner also endeavored to have suit brought against the members of a syndicate for the recovery of an amount of $120,000 alleged to be due under a contract between the syndicate and the New York corporation. Neither suit was instituted. When the Poughkeepsie plant was sold in 1929 petitioner abandoned all hope of effecting a reorganization.

In his return for 1929, petitioner deducted the cost of his stock as a loss. Respondent disallowed the deduction and determined that the loss was sustained in 1928 when the stock became worthless as conceded by the majority stockholders of the Delaware corporation.

Section 23 (e) of the Revenue Act of 1928 provides for a deduction of " losses sustained during the taxable year." Without question petitioner's loss on his Delaware corporation stock was *sustained* in the year in which such stock became worthless. *Forbes* v. *Commissioner*, 62 Fed. (2d) 571. Thus, the real issue before the Board is, in which year did the stock actually become worthless and not in which year did petitioner, in his own opinion, become convinced of the utter worthlessness of his stock.

Petitioner's case has been presented on the theory that he individually had hopes all during 1928 and the early part of 1929, of effecting a reorganization and that if accomplished his stockholdings would have some prospective value. Petitioner's testimony was directed chiefly to his efforts to reorganize and his hopes of accomplishing that purpose. He did not lose hope until the Poughkeepsie plant was actually sold, under foreclosure, in 1929. However, with respect to establishing the worthlessness of a stock investment for

the purpose of securing a loss deduction from gross income, the Supreme Court, in *United States* v. *White Dental Mfg. Co.*, 274 U.S. 398, said that a loss "may be complete enough for deduction without the taxpayers establishing that there is no possibility of an eventual recoupment." In other words, if in fact stock becomes worthless in a taxable year, the taxpayer's entertainment of a hope that by some turn of events he may recoup the apparent loss, does not form a basis upon which the loss deduction may be denied in that year. Conversely in the present proceeding, petitioner's hopes and his efforts to bring those hopes into being during 1928 are not a sufficient basis upon which to conclude that his stock was not worthless during that year, if in fact the stock was worthless in 1928.

The record discloses that in March 1928, the Delaware corporation was adjudged insolvent. Petitioner has failed to establish the extent of such insolvency. Was the corporation so hopelessly insolvent that it was self-evident that in 1928 the stock was absolutely worthless? Or, did the corporation on December 31, 1928, have assets of a value which, compared with its liabilities, would necessitate a conclusion that the stock was not then worthless? We do not know the answers to those questions for petitioner has not proved the facts relative thereto. On the other hand, respondent has determined that the stock became worthless in 1928 and that the loss was sustained in that year. In the recent case of *Taylor* v. *Commissioner*, 70 Fed. (2d) 619, the court discussed the extent of the burden of proof resting upon the taxpayer in proceedings before this Board. Although the full import of that decision would seem to lighten the burden of proof heretofore placed upon the taxpayer by numerous decisions by this Board and the courts, it was stated therein without qualification that the taxpayer had the burden of proving that the Commissioner's determination was wrong. In this proceeding the Commissioner's determination rests upon a finding that petitioner's stock in the Delaware corporation became worthless during the taxable year 1928 and such finding and the determination of tax liability thereon is prima facie correct. Petitioner has failed to prove sufficient facts to establish that his stock was not worthless in 1928. Accordingly the respondent's determination must be approved.

*Judgment will be entered for the respondent.*