CENTRAL MUTUAL INSURANCE COMPANY and others, Appellants, v. H. O., INC., Respondent. [Case No. 353.]

HUSSEY, Appellant, v. H. O., INC., Respondent. [Case No. 354.]

*Nos. 353, 354. Argued March 6, 1974.—Decided April 2, 1974.*
(Also reported in 216 N. W. 2d 239.)

For the appellants there were briefs by *Kluwin, Dunphy, Hankin & McNulty* of Milwaukee, and oral argument by *Ned J. Czajkowski* of Milwaukee.

For the respondent there was a brief by *Gibbs, Roper & Fifield* of Milwaukee, and oral argument by *Richard S. Gibbs.*

ROBERT W. HANSEN, J. These appeals deal with two causes of action arising from a single explosion of a gas cylinder, manufactured in Wisconsin, sold to a company in Pennsylvania, forwarded to a distributor in North Carolina, and purchased in North Carolina. The explosion occurred in North Carolina. One action is for personal injuries sustained by the repair mechanic injured in the explosion. The other is for property damage and is brought by insurers subrogated to the rights of the property owners involved. In each case the initial question presented is whether the North Carolina statute of limitations, as adopted by our own "borrowing" statute,[1] bars the cause of action. Each case will be considered separately.

*Carolina statutes.* Under the present North Carolina statute, appellant's cause of action for personal injuries sustained as a result of the cylinder's explosion would be deemed to accrue at the time "the injury was discovered by the claimant, or ought reasonably to have been discovered by him."[2] The limitation upon the action being

---

[1] Sec. 893.205 (1), Stats.

[2] Sec. 1–15, N. C. General Statutes, provides: "**Statute runs from accrual of action.**—(a) Civil actions can only be commenced within the periods prescribed in this Chapter, after the cause of action has accrued, except where in special cases a different limitation is prescribed by statute.

"(b) Except where otherwise provided by statute, a cause of action, other than one for wrongful death, having as an essential element bodily injury to the person or a defect in or damage to property which originated under circumstances making the injury, defect or damage not readily apparent to the claimant at the time of its origin, is deemed to have accrued at the time the injury was discovered by the claimant, or ought reasonably to have been discovered by him, whichever event first occurs; provided that in

brought is ten years from the last act of the defendant giving rise to the claim for relief. However, this statute became effective July 21, 1971, and does not affect pending litigation.[3] The earlier North Carolina statute applicable to this case provides that an action for injury to the person must be brought within three years of the accrual of the action.[4] If the three-year statute of limitations runs from the date of sale of the allegedly defective cylinder, the appellant's claim is barred. If the three-year statute runs from the date of injury or discovery of the defect, it is not here barred. So we must review the judicial construction of the term, "accrual of action," in the North Carolina statute.

We do not begin or end with reviewing cases where the purchaser of an allegedly defective product sues the manufacturer from whom he bought the product. Despite an early case to the contrary,[5] it appears that the North Carolina Supreme Court has held that where a product is

such cases the period shall not exceed 10 years from the last act of the defendant giving rise to the claim for relief." (As amended Session Laws 1971, effective July 21, 1971).

[3] Session Laws 1971, ch. 1157, sec. 2: "This act shall become effective upon ratification and shall not affect pending litigation."

[4] Sec. 1–15, N. C. General Statutes, prior to July 21, 1971, provided: "**Statute runs from accrual of action.**—Civil actions can only be commenced within the periods prescribed in this chapter, after the cause of action has accrued, except where in special cases a different limitation is prescribed by statute."

Sec. 1–52, N. C. General Statutes, in pertinent part, provides: "**Three years.**—Within three years an action—

"(5) For criminal conversation, or for any other injury to the person or rights of another, not arising on contract and not hereafter enumerated."

[5] *Hocutt v. Wilmington & Weldon RR. Co.* (1899), 124 N. C. 214, 219, 32 S. E. 681, holding statute of limitations ran from date of injury, in a flooding situation, rather than from when the ditches were dug, saying: ". . . It is well settled that the injury is the cause of action and that no statutes of limitation can begin to run before the cause of action accrues. This principle is the only just basis for any statutes of limitation, which otherwise would be subversive of common right. . . ."

sold directly to the plaintiff the cause of action accrues and the statute of limitations runs from the date of sale or other initial act of negligence on the part of the defendant.[6] In the *Thurston Case*, the North Carolina high court carefully limited its holding to the factual situation present where the sale of the defective product was made directly to the plaintiff.[7] As to when a cause of action accrues, there is a distinction between a purchaser, with intervening full control and opportunity for inspection between date of purchase and date of injury, and a nonpurchaser whose contact with the defective equipment may well begin at the moment of injury. This is particularly true in states like North Carolina in which, unlike Wisconsin,[8] "nominal damages" are sufficient to sustain recovery in a negligence action.[9]

[6] *Motor Lines v. General Motors Corp.* (1962), 258 N. C. 323, 128 S. E. 2d 413, holding cause of action accrued on the date that plaintiff bought the car from defendant rather than at time of injury. *See also: Sellers v. Refrigerators, Inc.* (1973), 283 N. C. 79, 194 S. E. 2d 817; *Matthieu v. Gas Co.* (1967), 269 N. C. 212, 152 S. E. 2d 336; *Jewell v. Price* (1965), 264 N. C. 459, 142 S. E. 2d 1.

[7] *Motor Lines v. General Motors Corp., supra,* at page 326, the court stating: "Whether this Court, in a case where there is no injury to plaintiff or invasion of his rights at the time of defendant's negligent act or omission, would follow *Hooper v. Lumber Co., supra,* need not be decided on this appeal. Decision on this appeal, as in *Shearin v. Lloyd, supra,* is based on the ground that plaintiff did sustain injury and his rights were invaded at the time of the alleged negligent acts and omissions of defendants." *Citing: Hooper v. Lumber Co.* (1939), 215 N. C. 308, 1 S. E. 2d 818, holding cause of action for flooding plaintiff's land occurred at time defendant negligently placed logs and trestles in a river rather than at time of flooding; and *Shearin v. Lloyd* (1957), 246 N. C. 363, 98 S. E. 2d 508, holding action for malpractice accrues at time of injury rather than at time of discovery or when harm occurs.

[8] *See: Widemshek v. Fale* (1962), 17 Wis. 2d 337, 117 N. W. 2d 275; *Holifield v. Setco Industries, Inc.* (1969), 42 Wis. 2d 750, 168 N. W. 2d 177, holding actual damages to be an essential element in a cause of action based on negligence.

[9] *Motor Lines v. General Motors Corp., supra,* at page 325. *See also: Shearin v. Lloyd, supra,* at page 367.

We do not find, nor do the briefs on appeal or the trial court opinion suggest, a North Carolina Supreme Court decision dealing with when the cause of action accrues where the injured party did not purchase the equipment and had no reason or basis for bringing a cause of action, even for nominal damages, against the manufacturer of the equipment involved until the time of injury. Our attention is directed to intermediate level appellate court decisions, but they appear to be in conflict, two supporting the position of appellant,[10] and two supporting the position of the respondent.[11] With no definitive construction of the North Carolina statute of limitations by the North Carolina Supreme Court, dealing with the fact situation before us, we accept the construction given such statute by the United States District Court for the Western District of North Carolina. In an action by a truck driver against a tire manufacturer to recover for injuries the truck driver sustained in a collision which allegedly resulted from the failure of an inferior tire

[10] *See: Hager v. Equipment Co.* (1973), 17 N. C. App. 489, 195 S. E. 2d 54, where plaintiff, injured by falling elevator, sued elevator owner, who impleaded the seller in a third-party negligence and breach of warranty action seeking indemnification, holding statute of limitations did not run from date of sale but arose when the company was legally obligated to pay plaintiff. *See also: Insurance Co. v. Motor Co.* (1973), 18 N. C. App. 689, 198 S. E. 2d 88, where insured was sued in an auto accident and his insurer, after paying his claim, brought action against defendants for negligent manufacture of a brake cylinder, the court holding the cause of action did not accrue until the insurer became legally liable to its insured.

[11] *See: Jarrell v. Samsonite Corp.* (1971), 12 N. C. App. 673, 184 S. E. 2d 376, certiorari denied (1972), 280 N. C. 180, 185 S. E. 2d 704, where restaurant patron fell from allegedly defective chair, the court holding statute of limitations ran from date restaurant purchased chair. *See also: State v. Aircraft Corp.* (1970), 9 N. C. App. 557, 176 N. E. 2d 796, where plane sold by manufacturer to third parties crashed into state-owned building, court holding statute of limitations ran from date of sale of plane by manufacturer.

purchased by his employer, the federal court held that the North Carolina statute, the one applicable in the case before us, ran from the time the driver was injured, not from the time the tire was furnished the employer.[12] In construing the North Carolina statute, the court held:

"A great deal has been written on the subject of when a cause of action arises against a manufacturer or supplier based upon the production or furnishing of a defective or inadequate or dangerous piece of personal property or machinery. The question here is whether the statute [Note: the North Carolina statute of limitations applicable to the case before us.] begins to run from the time of the defendant's act or default or whether it begins to run from the time of injury to the plaintiff. This question is a theoretical one unless viewed in light of the language of the statute. The North Carolina statute by its terms begins to run after the action has 'accrued.' The suit does not involve an '*injury* to the person or rights of another' until the plaintiff was hurt. There was no 'injury' and no basis for action until the wreck occurred in North Carolina on July 26, 1965. New Dixie might have had an action for breach of contract when the tire was delivered, but plaintiff, the driver, had no cause of action until he was injured.

"This conclusion is believed to be consistent with Hocutt v. Wilmington & W. Railroad, 124 N. C. 214, 32 S. E. 681 (1899) and with all recent North Carolina decisions . . . ."[13]

In *Stell*, the action was instituted more than three years after the sale of the allegedly defective tire, but less than three years after the accident and injuries to the plaintiff, and it was held not barred by the North Carolina statute of limitations applicable in 1968. In the case before us, the action was instituted more than three years after the sale of the allegedly defective cylinder, but less than three years after the accident

---

[12] *Stell v. Firestone Tire & Rubber Co.* (W. D. C. N. C. 1969), 306 Fed. Supp. 17.

[13] *Id.* at pages 18, 19.

and injuries to the plaintiff, and we follow the construction of statute and decision in *Stell* to hold that it was not barred by the North Carolina statute of limitations, the same statute involved in the *Stell Case*. We find additional support for our accepting the reasoning and result in *Stell* in the recent statement of the North Carolina Supreme Court in a breach of contract case,[14] the statement being: "In no event can a statute of limitations begin to run until plaintiff is entitled to institute action."[15]

### *The property damage action.*

Wisconsin's borrowing statute does not block the path of the property damage action, that statute being limited to actions "to recover damages for injuries to the person."[16] However, such inapplicability of such statute does not entirely clear the way for the bringing of the insurers' actions arising from property damages sustained by their insureds in the explosion. With the property-damaging explosion occurring in the state of North Carolina, and the affirmative defense raised that the cause of action is barred by the North Carolina statute of limitations, we are back on the bus to North Carolina to determine if the action is there barred by the applicable statute of limitations and, if it is, we are back on the bus to Wisconsin to determine the choice-of-law question as to whether the law of the forum or the law of the place of injury is to be applied.

The plaintiff insurance companies seek reimbursement or indemnification for losses sustained by them in payment of property damage claims paid by them to their insureds arising out of the boiler explosion in North Carolina. Considered as an action for indemnity, the

---

[14] *Reidsville v. Burton* (1967), 269 N. C. 206, 152 S. E. 2d 147.
[15] *Id.* at page 211.
[16] Sec. 893.205 (1), Stats.

cause of action apparently was not barred in North Carolina by the fact that the action was instituted more than three years after the sale by the manufacturer of the cylinder alleged to be defective. Two North Carolina cases, both at the intermediate appellate court level, deal with accrual of the cause of action under the state's statute of limitations in an indemnity action. In the most recent case,[17] the plaintiff's insured was in an automobile accident and was sued by third parties. The insurer paid these parties and then brought action against defendants for negligent sale and manufacture of a brake cyclinder. While holding the plaintiff's insured not to have been negligent on the running of the statute of limitations, the court held:

". . . This Court, in *Hager v. Equipment Co.*, 17 N. C. App. 489, 195 S. E. 2d 54 (1973), held that the trial court erred in dismissing a third-party action for indemnity against the seller of an allegedly defective elevator sold more than three years earlier on the ground that the statute of limitations barred the indemnity action. We held that the claim for indemnity did not arise until the injured party had brought an action against the one seeking indemnity, and that the claim for indemnity was separate and distinct from any possible claim that may have arisen at the time the elevator was purchased. . . ."[18]

The *Hager Case*[19] referred to, also an intermediate appellate court decision, involved a plaintiff who was injured in a falling elevator and who sued the elevator owner who then impleaded the seller in a third-party negligence and breach of warranty action seeking indemnification from the seller for any sums for which it might be found liable to the injured plaintiff. Holding that the North Carolina statute of limitations, the

[17] *Insurance Co. v. Motor Co., supra,* footnote 10.

[18] *Id.* at page 692.

[19] *Hager v. Equipment Co., supra,* footnote 10.

one applicable to the case before us, did not run from the time of sale, but did run from the time the elevator owner was legally obligated to pay the injured plaintiff, the court held:

"The distinction is that Brewer, as a third-party plaintiff, is not seeking to recover for damages it sustained as a result of a defect present in the elevator at the time of purchase. Such a claim for relief would be barred because Brewer [the elevator owner] would have had a right to sue for nominal damages at least at the time it purchased the elevator. [Cases cited.] Brewer's claim for indemnity is separate and distinct from any possible claim that may have arisen at the time the elevator was purchased and consequently the statute of limitations did not begin to run against the indemnity claim at that time." [20]

In their cause of action for property damage the insurers seek reimbursement or indemnity for payments they were legally obligated to make to their insureds as a result of the gas cylinder explosion in North Carolina. Under the cases cited, such action for such indemnification is separate and distinct from any claim that might have arisen at the time the cylinder was sold by the manufacturer. Since it was brought within three years after they were legally obligated and did in fact make such payments, under the cases cited their cause of action is not barred by the applicable North Carolina statutes.

If the subrogation agreements the insurers secured from their insureds could be construed as doing no more than placing them in the shoes of their insureds, with no claim to indemnity separable from an action for damages brought by an uninsured property owner, the result would be the same. The case that would control would be the *Air Products Case*.[21] In that case a Pennsyl-

[20] *Id.* at page 494.

[21] *Air Products & Chemicals, Inc. v. Fairbanks* (1973), 58 Wis. 2d 193, 206 N. W. 2d 414.

vania plaintiff brought an action in Wisconsin sounding in negligence, strict liability, breach of contract and breach of warranty against a Delaware corporation which manufactured electric motors at a plant in Wisconsin. Pennsylvania had a four-year statute of limitations; Wisconsin had a six-year statute. This court held that the Wisconsin statute should apply. The decision restated the five criteria applicable in this state to choice-of-law questions.[22] As to conflicts of law in the statute of limitations to be held applicable, the decision held "most important" the considerations: "Maintenance of Interstate and International Order" and "Advancement of the Forum's Governmental Interests."[23] It held that the underlying purpose in the enactment of a statute of limitations is ". . . to protect defendants and the courts from '. . . stale claims springing up at great distances of time, and surprising the parties . . .' when all the evidence, once vivid, has since become obscure. . . ."[24] It found the same essential considerations to have guided the Pennsylvania courts,[25] as we would find them to have long guided the North Carolina courts.[26] It concluded that accepting Wisconsin's longer

[22] *Id.* at page 202, quoting *Heath v. Zellmer* (1967), 35 Wis. 2d 578, 596, 151 N. W. 2d 664, holding:

" '. . . faced with a choice-of-law decision, this court should base its conclusions upon the following choice-influencing considerations . . .

" 'Predictability of results;

" 'Maintenance of interstate and international order;

" 'Simplification of the judicial task;

" 'Advancement of the forum's governmental interests;

" 'Application of the better rule of law.' "

[23] *Id.* at page 203.

[24] *Id.* at page 203, quoting *Bowe v. LaBuy* (1934), 215 Wis. 1, 3, 253 N. W. 791.

[25] *Id.* at page 203, citing *Schmucker v. Naugle* (1967), 426 Pa. 203, 231 Atl. 2d 121.

[26] *Hocutt v. Wilmington & Weldon RR. Co.* (p. 219), *supra*, footnote 5, the North Carolina Supreme Court saying as to statutes of limitations: ". . . They are statutes of repose, intended to force

statute of limitations ". . . would in no way affect any legitimate interest of Pennsylvania since their statute, like ours, is designed to protect defendants and in this case, Air Products, the Pennsylvania resident, is the plaintiff—not the defendant. . . ." [27] Similarly, the plaintiffs in the case before us are the out-of-state residents and the defendant is the Wisconsin resident. It found that the Wisconsin legislature had concluded ". . . that the interests of Wisconsin are best advanced by a longer period. . . ." [28] We need not go as far as *Air Products* in holding that ". . . Pennsylvania is in no position to in any way influence what Wisconsin feels to be an appropriate period of protection for both itself and defendants from stale lawsuits. . . ." [29] While we deal here with a longer period of time, three years in North Carolina, six years in Wisconsin, the possible conflict of laws issue revolves around the "date of injury" versus the "date of sale" as the time when a cause of action accrues. We note that North Carolina's legislature in 1971 modified its statute of limitations as to products liability cases to retain the three-year limitation, but to run from date of injury, adding a ten-year limitation to run from the date of defendant's last act.[30] The 1971 law in North Carolina may well appeal to many as a better balancing of the factors of fairness to plaintiffs and defendants alike than either the law that preceded it or the present Wisconsin law. But the point here is that under the two considerations that *Air Products*

all men to litigate their claims within a reasonable time, while the facts are yet fresh in the memory of living witnesses, and before the probable loss or destruction of important papers. . . ."

[27] *Air Products & Chemicals, Inc. v. Fairbanks, supra,* footnote 21, at pages 203, 204.

[28] *Id.* at page 204.

[29] *Id.* at page 204.

[30] Sec. 1-15, N. C. General Statutes, as amended by Session Laws 1971, effective July 21, 1971. *See:* footnote 2.

terms the two most important in statute of limitations conflicts, we find no reason for applying the earlier North Carolina statute that its own legislature found inappropriate. Viewed either as an action for indemnity or no more than an action brought in the stead of their insureds, the insurers' action for property damages is controlled by the Wisconsin statute of limitations as to such claims.

From the preceding discussion it is clear that both motions for summary judgment, based on the affirmative defense of the actions being barred by the North Carolina statute of limitations applicable to them, should have been denied, not granted, by the trial court.

*By the Court.*—Judgments reversed.